CHESTER, d. b. a., Appellant, v. C. EMORY GLANDER, Tax
Commissioner, Appellee.

Board of Tax Appeals.

No. 14402.   Decided March 10, 1949.

Lawrence A. Kane, Albert V. Lerner, Cincinnati, for appellant.

**ENTRY**

This cause came on to be heard upon the appeal of Sam
E. Chester, d. b. a. Diamond Vending Machine Company, from
a final order of the tax commissioner for the years 1945, 1946
and 1947 made against him in the sums of $202.95 for 1945;
$177.20 for 1946 and $339.73 for 1947.   Said matter was heard
and submitted upon the notice of appeal, the transcript of
the proceedings before the tax commissioner and the evidence
taken before an attorney-examiner of the Board.

The appellant owns coin operated devices such as automatic
phonographs, pinball machines and slot machines, and his
business consists in placing these devices in restaurants and
cafes and he shares the gross income therefrom with the
proprietor on a percentage basis.   During the above tax years
he was the owner of certain coin operated devices used in
his business, and, in listing them for taxation in his personal
property tax returns, he used as the true value thereof the

value as determined by him on a physical inventory of the property on hand on tax lien date in each year, to-wit, January 1st.

On September 10, 1947, the tax commissioner made an additional personal property tax assessment against appellant, for the reason that the tax commissioner was of the view that appellant had understated the true value of his property and had also failed to list the phonograph records used in his business, or give a value therefor.

The tax commissioner based his increased findings upon an audit of appellant's records in which he determined that the taxpayers had taken an excessive amount of depreciation for said years and that he had not capitalized his purchases of phonograph records used in his automatic phonographs. After a review and redetermination the commissioner sustained his assessment and from this final order the appellant filed his appeal with this Board.

The tax commissioner did not make a physical inventory of the equipment or property of the appellant but secured all his information for his audit from the appellant's books and records.

The tax commissioner capitalized the phonograph records used by the appellant in the following manner to find their true value in money. He made an audit of appellant's books and records covering a period of ten years and found that during that period the appellant had expended $13,988.28 for records, and the commissioner deducted $96.35 for loss by sale of assets, leaving a balance of $13,891.93 for purchases of records and he divided this amount by 12 instead of 10, which he explained was to take care of any discrepancies and errors he may have made in determining an average yearly value; this gave him $1157.67, for an average value of purchases of records for each year, and of this amount he deducted 50% for the reason that their market value would not be 100% throughout the year, which gave him $575 for the book value of these phonograph records, and this last amount was added to Schedule 4 of each year's tax return.

The appellant did not report his phonograph records for taxation contending that they are a part of his expenses in operating his automatic phonographs and that the life of a phonograph record used in a public phonograph is only thirty days.

The Board can not agree with the contention of the appellant that these records should not be listed for taxation for if the appellant was to continue business it would certainly

be necessary to have a number of these records on hand at all times, and the Board can not conceive of a going business concern disposing of all of its records; or that all of them have been destroyed or are not in use on tax lien date and, therefore, the Board is of the opinion that the tax commissioner was correct in placing a value on these records for taxation and that the value so placed on them by the commissioner fairly represented their true book value.

The tax commissioner in order to find the true value of the remainder of the property of the appellant took the purchase price of each item so shown by the books and records of the appellant and from this he deducted a depreciation of 5% for the year of acquisition and a 10% depreciation for each of the years thereafter, allowing the same rate of depreciation as is set out in the tax commissioner's department composite prima facie depreciation rates for park amusement equipment and also furniture and fixtures.

The appellant made a physical inventory of his property on hand on tax lien date and depreciated the automatic phonographs and slot machines at a rate of 20% each year after purchase and for the pinball machines he took a depreciation of 33 1/3% each year after purchase.

The appellant produced evidence to show that the mechanical life of an automatic phonograph and slot machine used in a public place is not more than five years and the mechanical life of a pinball machine similarly used is not more than three years. The appellant further testified that he based his finding of true value in money of his property not only on his experience of several years in purchasing and selling these used machines but that he consulted several trade journals which deal in similar machines which show their sale value as used machines.

The evidence shows that these automatic phonograph machines were constructed of many parts which were similar to those used in broadcasting equipment and that broadcasting equipment was depreciated by the tax commissioner as listed on his composite prima facie depreciation rates—at 20% per year after purchase.

The evidence shows further that new types of pinball and automatic phonograph machines are constantly being placed on the market and that the older models lose their "playing appeal" and that they become obsolete in a very short time, and although they may be in good physical condition they are of little value because they have lost their "playing appeal." Obsolescence was one of the factors used by the appellant in arriving at the total amount of depreciation to be allowed in determining the values of these machines.

252

The evidence as to slot machines showed that they did not become obsolete as rapidly as did the pinball and phonograph machines because the "playing appeal" was not so great a factor in the playing of these machines. The person playing a slot machine is not interested in the type or newness of the machine but is interested in the amount of money he may win.

The Board is of the opinion that obsolescence should be taken into consideration in allowing depreciation especially in pinball and phonograph machines because, as the evidence shows, customers soon tire of playing the same type of a pinball machine or the same records on an automatic phonograph machine.

Taking into consideration all of the evidence in this matter, the Board is of the opinion that a depreciation of 33 1/3% per year taken by appellant for pinball machines is too great and that a 5% depreciation for the first year and a 10% per year depreciation thereafter allowed by the tax commissioner is not a sufficient amount of depreciation to be allowed in determining value. From all the evidence produced herein the Board of Tax Appeals is of the view that a depreciation rate of **10% of cost for the year of acquisition, and an annual yearly rate of 20% thereafter, up to a point where 80%** of the cost has been written off, should be allowed by the tax commissioner in determining the true value of coin operated automatic phonographs and pinball and other similar machines. As to coin operated "slot machines" where a money return is sometimes expected by players with gambling instincts, the Board is of the view that a depreciation rate of 5% of cost for the year of acquisition and 10% per year thereafter, up to a point where 80% of cost has been written off, should be allowed.

The action of the tax commissioner herein complained of is accordingly modified to the extent above set out and this cause is remanded to that official with instructions to change his records and issue proper assessment certificates in accordance with the views and opinions expressed herein.

I hereby certify the foregoing to be a true and correct copy of the action of the Board of Tax Appeals of the Department of Taxation of Ohio, this day taken, with respect to the above matter.

Joseph D. Bryan
Secretary.